UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PENG CHENG PAN, A#70-898878,

                           Petitioner,                    DECISION AND ORDER

    v.

                                                           04-CV-6434 CJS

JOHN ASHCROFT, Attorney General,
WILLIAM CLEARY, Acting Detention
and Removal Field Office Director,
DHS, ICE

                           Respondents.

_____

Now before the Court are petitioner's petition for a writ of habeas corpus [#1], pursuant to 28 U.S.C. § 2241 (2005), petitioner's motion for a preliminary injunction [#3], petitioner's motion for summary judgment [#9], and petitioner's motion for bail [#12]. For the reasons that follow, petitioner's petition is dismissed and the motions are denied.

## BACKGROUND

The facts of this case are not in dispute. Petitioner is a citizen of China, who entered the United States illegally on November 20, 1991. On October 11, 1995, petitioner was convicted in State court of petit larceny and received a conditional discharge. Subsequently, on September 12, 1996, petitioner was convicted in Federal court of Racketeering and Extortion, and was sentenced to 110 months of imprisonment on February 13, 2004 and three years of supervised release.

1

Upon completion of his Federal confinement, petitioner came into the custody of the Bureau of Immigration and Customs Enforcement ("BICE"), Department of Homeland Security ("DHS"). On March 2, 2004, an immigration judge ordered petitioner's removal from the United States to the People's Republic of China, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (alien present without being admitted or paroled), INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182 (a)(2)(A)(i)(I) (alien committing a crime of moral turpitude), and INA § 212(a)(2)(B), 8 U.S.C. § 1182 (a)(2)(B) (alien committing two or more criminal offenses). Petitioner did not appeal the order, and presently remains detained at the Buffalo Federal Detention Facility, awaiting deportation to China. (*See* Aff. of Kenneth Heist [#7], at 2.)

Pursuant to 8 C.F.R. § 241.4, petitioner's continued detention status was reviewed by DHS. In that regard, on June 1, 2004, DHS sent petitioner a notice entitled "Decision to Continue Detention Following Interview," which stated in relevant part:

> You are not being released because:
>
> On October 11, 1995, you were convicted of Petit Larceny and received a conditional discharge. On September 12, 1996, you were convicted of Racketeering and Extortion. For these crimes, you were sentenced to 110 months confinement and 3 years supervised release.
>
> You have failed [to] demonstrate that there is no significant likelihood of your repatriation in the reasonably foreseeable future. The Service[1] has been able to repatriate citizens of China in the last year. A request for a travel document to facilitate your removal from the United States to the People's Republic of China is currently pending with the Chinese Consulate in New York. Once this travel document is received, arrangements will be made to remove you to the People's

---

[1]The Service means the Immigration and Naturalization Service of the U.S. Department of Justice.

Republic of China.

(Aff. of Kenneth Heist, [#7], Ex. C.) Subsequently, on July 20, 2004, the Office of Detention and Removal Operations of the DHS sent petitioner a notice entitled "Decision to Continue Detention," which again denied him release from custody. This notice contained similar reasoning as the June 1, 2004 notice, but further noted:

> A request for a travel document was submitted to the Consulate of China and the process to verify your identity is ongoing. The government of China regularly issues documents to effect the repatriation of its nationals. There is no indication at this time that a certificate will not be issued for your repatriation. Furthermore, your convictions for Racketeering and Extortion and your arrests for Robbery 1st degree, Robbery 2nd degree and Grand Larceny 2nd Degree shows a violent criminal history. You are also a known member of the Fukienese Flying Dragons a criminal organization which achieves it's goals by violence. Based on all of these facts, you are to be detained in custody as ICE[2] deems you to be a flight risk and a threat to the community.

(Aff. of Kenneth Heist, [#7], Ex. D.) Although, petitioner received notice of both reviews and had the opportunity to contest the likelihood of his repatriation to China in the reasonably foreseeable future, he failed to do so.

**Petition for Writ of Habeas Corpus**

On September 8, 2004 petitioner, acting *pro se,* filed his habeas petition and submitted his motion for preliminary injunction. Petitioner argues three main points in his petition. First, he submits that his continued detention is a statutory violation, in that it contravenes 8 U.S.C. § 1231(a)(b) (Pet., at 6) as interpreted by the Supreme Court in

---

[2]ICE is the abbreviation for of U.S. Immigration and Customs Enforcement.

3

*Zadvydas v. Davis*, 533 U.S. 678 (2001).³  Second, petitioner states, his continued detention is a substantive due process violation through a deprivation of the core liberty interest in freedom from bodily restraint. (Pet., at 7.)  Third, petitioner suggests that he has been denied the timely and meaningful opportunity protected by the Due Process Clause of the Fifth Amendment to demonstrate that he should not be detained because, "[t]he failure [of] respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates Petitioner's right to procedural due process." (Pet., at 8.)

Respondents maintain that petitioner's continued detention is lawful and in accordance with the rules and regulations established by Congress in response to the decision of the Supreme Court in *Zadvydas.* (Resp't's Mem. in Opp'n to Habeas Pet. and Mot. for Prelim. Inj., at 3.)  Thus, respondents maintain that the petition should be denied for failure to state a claim upon which relief can be granted.

Respondents also submit that petitioner's claim that he was denied due process is without merit. (Resp't's Mem. in Opp'n to Habeas Pet. and Mot. for Prelim. Inj., at 14.)  In support of their argument, respondents rely on *Wang v. Ashcroft,* 320 F. 3d 130, 146 (2d Cir. 2003)*,* a case in which the Second Circuit ruled that an alien's continued detention did not jeopardize his due process rights as long as removal is reasonably foreseeable.  Here, respondents submit that, since petitioner's removal is reasonably foreseeable, he has not alleged any basis for this Court to find that his substantive due process rights were violated. (Resp't's Mem. in Opp'n to Habeas Pet. and Mot. for Prelim. Inj., at 14.) In addition,

---

³In *Zadvydas v. Davis*, 533 U.S. 678 (2001) the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to authorize the detention of aliens who have been admitted to the country only as long as "reasonably necessary to effectuate their removal." *Id.*, at 689-699. Subsequently, in Clark v. *Suarez Martinez,* _ U.S. __, 125 S. Ct. 716 (2005), the Supreme Court applied *Zadvydas* to aliens deemed inadmissible to the United States as well.

4

respondents assert petitioner was afforded the opportunity to be heard during the administrative reviews of his detention, but failed to avail himself of such an opportunity for procedural due process (Resp't's Mem. in Opp'n to Habeas Pet. and Mot. for Prelim. Inj., at 16.)

**Motion for Preliminary Injunction**

In addition to filing his habeas petition on September 8, 2004, petitioner also filed a motion for preliminary injunction. In this application, petitioner requests his release from BICE's custody pending resolution of his writ of habeas corpus or his repatriation to China. More specifically, petitioner challenges his continued detention on the grounds that he poses no risk of flight or risk to the community[4]; he has not engaged in any violent or threatening behavior while in BICE detention; he has a cousin who is a United States citizen and is able to offer him employment in the United States; and that the balance of harm favors his release.

On the other hand, respondents argue that petitioner is not entitled to injunctive relief for two reasons. First, respondents state that petitioner cannot establish that he is likely to succeed or that there are sufficiently serious questions going to the merits of his claim, since his continued detention is pursuant to statutory authority and the immigration proceedings have complied with *Zadvydas.* Second, respondents assert that due to petitioner's violent criminal history, as evidenced by his federal convictions for racketeering and extortion, and his willingness to disregard the laws of the United States, there is a risk of harm to the public if petitioner were released. Respondents submit that the risk of harm

---

[4] Petitioner suggests this particularly in light of the regulations adopted by BICE that describe detailed conditions of release for aliens.

5

to the public counter-balances any harm to petitioner caused by his continued detention as evidenced by his felony conviction for racketeering and extortion. (Resp'ts' Mem. in Opp'n to Habeas Pet. and Mot. for Prelim. Inj., at 17.)

**Motion for Summary Judgment**

On December 2, 2004, petitioner moved for summary judgment and argued that he should be released from custody pursuant to the authority of *Zadvydas* on the grounds that there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law. Preliminarily, respondents contend that petitioner's motion should be denied because he failed to comply with the procedural requirements for bringing a summary judgment motion. Alternatively, respondents argue that, if the Court is inclined to consider the motion given petitioner's pro se status, it should deny his application because he has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. Consequently, respondents maintain petitioner's continued detention is appropriate.

**Motion for Bail or Release Pending Deportation**

On January 18, 2005 petitioner wrote the Court asking for expedited adjudication of his petition, and for release pending deportation, noting that, as of that date, no travel documents had been received. With respect to petitioner's motion for bail, respondents addressed it in their memorandum of law stating, "On January 18, 2005, Pan wrote the Court and asked for expedited adjudication of his petition, noting that as of that date, no travel documents had been received from China."

The Court has now had the opportunity to thoroughly consider the submissions of both petitioner and respondents.

## STANDARDS OF LAW

It is settled law that "[a] petition for habeas corpus may be used to challenge incarceration or orders of deportation as being 'in violation of the Constitution or laws or treaties of the United States.'" *Sol v. I.N.S.*, 274 F.3d 648, 651 (2d Cir. 2001) (quoting 28 U.S.C. § 2241(c)(3)). The Court has subject matter jurisdiction over the matters raised herein. *See, I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001).

The relevant statute provides that, "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period.')." 8 U.S.C. § 1231(a)(1)(A). However, section 1231 provides that:

> [a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision....

8 U.S.C. § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682. As the *Zadvydas* decision further noted:

> Related Immigration and Naturalization Service (INS) regulations add that the INS District Director will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90-day removal period expires. 8 C.F.R. § 241.4(c)(1), (h), (k)(1)(i) (2001). If the decision is to detain, then an INS panel will review the matter further, at the expiration of a 3-month period or soon thereafter. § 241.4(k)(2)(ii). And the panel will decide, on the basis of records and a possible personal interview, between still further detention or release under supervision. § 241.4(i). In making this decision, the panel will consider, for example, the alien's disciplinary record, criminal record, mental health reports, evidence of rehabilitation, history of flight, prior immigration history, and favorable factors such as family ties. § 241.4(f). To authorize release, the panel must find that the alien is not likely to be violent, to pose a threat to the

> community, to flee if released, or to violate the conditions of release. § 241.4(e). And the alien must demonstrate "to the satisfaction of the Attorney General" that he will pose no danger or risk of flight. § 241.4(d)(1). If the panel decides against release, it must review the matter again within a year, and can review it earlier if conditions change. § 241.4(k)(2)(iii), (v).

*Id.*

In *Zadvydas*, the U.S. Supreme Court considered "whether [§ 1231(a)(6)] authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." 533 U.S. at 682. The Court decided that § 1231(a)(6) contains "an implicit 'reasonable time' limitation, the application of which is subject to federal court review." *Id*. In particular, the Supreme Court noted that § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id*. at 689. The *Zadvydas* decision involved two aliens against whom final orders of deportation were entered, but whom the INS could not deport, since the countries to which the INS was attempting to deport the aliens refused to accept them. *Id*. at 682-88. The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. However, the Court further noted that "if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying the confinement within that reasonable removal period." *Id*. at 700. The Supreme Court concluded by holding that six months was a presumptively reasonable period of detention, and stated the following:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the

> reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701.

## DISCUSSION

Turning to the merits of petitioner's habeas petition, the Court determines that the petition must be dismissed. Petitioner has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has not alleged any facts to indicate that China will not issue the necessary travel documentation for his repatriation. In fact, unlike the two aliens in *Zadvydas*, whose acceptance was refused by the countries to which the INS was attempting to deport them, petitioner has not received any notification from China that he will not be repatriated. The Court notes that the Supreme Court held in *Demore v. Hyung Joon Kim,* 538 U.S. 510, 530 (2003) that, "'[d]etention during removal proceedings is a constitutionally permissible part of that process." In *Demore,* the court emphasized that in *Zadvydas,* where the aliens were being detained for deportation and it became clear that deportation was not feasible, there was no longer a reasonable basis for their detention because the purpose of the detention, which is to secure an alien's removal, no longer existed. *See Demore* at 527-28. In petitioner's case, as in *Demore,* the purpose for detention still continues to exist, since there is no evidence to indicate that removal will not be successful. Defendants have

demonstrated that they have made good faith and continuing efforts to effectuate petitioner's deportation (Decl. of Kenneth Heist [#14], at 3). Since petitioner has failed to meet his burden of proof of demonstrating that there is good reason to believe there is no significant likelihood of his repatriation in the reasonably foreseeable future, as described by the Supreme Court in *Zadvydas*, petitioner's continued detention is lawful.

The Court also finds that petitioner has failed to allege a basis to find that respondents have violated his substantive or procedural due process rights. The Court notes that under *Zadvydas,* once removal is no longer foreseeable, continued detention violates INA § 241, 8 U.S.C. § 1231 and the Due Process Clause. However, for the same reason noted above, namely that petitioner's removal is still reasonably foreseeable, the Court finds that petitioner's detention does not jeopardize his substantive due process rights.

Similarly, the Court finds that Petitioner was given notice of the administrative reviews of his continued detention, and he was provided with the opportunity to present the evidence which he believed supported his claim that there was no significant likelihood of his removal in the reasonably foreseeable future (although he chose not to exercise this option). The Court notes that the administrative reviews included consideration of petitioner's criminal history and the efforts to obtain travel documentation. In light of the evidence presented, petitioner's continued detention was deemed appropriate under the circumstances.

Moreover, the Court rejects petitioner's arguments that respondents failed to provide a neutral decision-maker to review the continued custody of petitioner, and that this failure violates petitioner's right to procedural due process. The Court observes that two circuit

courts of appeal have considered the same "institutional bias" argument and rejected it. *See United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000); *United States v. Benitez-Villafuerte,* 186 F.3d 651, 659 (5th Cir. 1999). When rejecting the institutional bias argument, the Ninth and the Fifth Circuits were guided by *Marcello v. Bonds,* 349 U.S. 302 (1955). In *Marcello*, the Supreme Court held that due process was not violated simply because the INS special hearing officer was subject to the supervision and control of the INS. *Id.* at 311.[5] Therefore, the Court finds that the petitioner's administrative reviews were sufficient to satisfy his procedural due process rights. Consequently, petitioner's claim that he was denied due process has no merit.

With respect to petitioner's motion for a preliminary injunction, the Court finds that petitioner cannot show a likelihood of success on the merits of his petition, or that there are sufficiently serious questions going to the merits. In addition, the Court finds that the balance of harm does not favor petitioner's release. Furthermore, the Court finds that the regulations adopted by the BICE in 8 C.F.R. § 241.5 are not sufficient to prevent any risk of Petitioner's flight or threat to the community.[6]

---

[5]Subsequently in 2002, the Eastern District of New York, explicitly guided by the above-noted institutional bias cases, rendered a similar finding. *See Evangelista v. Ashcroft,* 204 F. Supp. 2d 405 (E.D.N.Y. 2002).

[6] 8 *C.F.R.* § 241.5 provides as follows:

Conditions of release after removal period.

(a) Order of supervision. An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision. The Commissioner, Deputy Commissioner, Executive Associate Commissioner Field Operations, regional director, district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer-in-charge may issue Form I-220B, Order of Supervision. The order shall specify conditions of supervision including, but not limited to, the following:
(1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;

(continued...)

The Court concludes that the nature and seriousness of petitioner's federal criminal convictions for racketeering and extortion render him a flight risk and a serious threat to the public safety were he to be released pending deportation, and the Court further finds that this risk would not be sufficiently addressed by the Title 8 Regulations. Moreover, petitioner does not contest respondents's contention that he is admittedly a member of a violent criminal organization called the Fukienese Flying Dragons. This fact contributes to the Court's conclusion that the petitioner would pose both a flight risk and danger to the community if released. The Court reiterates that this is not a case involving continued indefinite detention of petitioner, as was the case in *Zadvydas,* which would raise serious constitutional concerns.  Rather, the purpose of petitioner's detainment is to secure his pending removal and to prevent danger to the community. Therefore, the Court determines that the balance of harm favors his continued detention, since the risk to the public in releasing petitioner outweighs any harm that he may be suffered as result of his detainment

---

[6](...continued)
(2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;
(3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;
(4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and
(5) A requirement that the alien provide the Service with written notice of any change of address on Form AR-11 within ten days of the change.
(b) Posting of bond. An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal.
(c) Employment authorization. An officer authorized to issue an order of supervision may, in his or her discretion, grant employment authorization to an alien released under an order of supervision if the officer specifically finds that:
(1) The alien cannot be removed in a timely manner; or
(2) The removal of the alien is impracticable or contrary to public interest.

pending repatriation.

Regarding petitioner's motion for summary judgment, based on the Court's determination, as discussed above, that petitioner has not met his burden of proving that there is no significant likelihood of his removal in the reasonably foreseeable future, the Court holds that petitioner has failed to demonstrate that he is entitled to judgment as a matter of law. Therefore, the Court denies petitioner's motion for summary judgment.

As for petitioner's motion for bail, since the Court has dismissed petitioner's habeas petition, petitioner's motion for bail is now moot and is, therefore, denied.

## CONCLUSION

For all of the foregoing reasons, petitioner's petition for a writ of habeas corpus [#1] is dismissed and the motions for a preliminary injunction [#3], summary judgment [#9], and bail [#12] are denied.

IT IS SO ORDERED.

Dated: June 9, 2005
     Rochester, New York


              ENTER:

                    /s/ Charles J. Siragusa
                    CHARLES J. SIRAGUSA
                    United States District Judge